Dear Dr. Jacqueline C. Haas
You have requested our opinion whether the Board of Education of Harford County (the "Board") may lease real property owned by the Board to a private corporation for a 99-year term in return for a $500,000 cash payment and certain real property in fee simple.
In an opinion dated November 22, 2005, the General Counsel for the Board ("Board Counsel") concluded that the Board does not have such authority. A copy of that opinion, which describes the proposed transaction in greater detail, is attached. We have reviewed Board Counsel's opinion and agree with his analysis and conclusion.
In reaching the conclusion that the Board lacks authority to enter into the proposed lease, Board Counsel relied on Annotated Code of Maryland, Education Article ("ED"), § 4-114, which states that a local board holds school property in trust for the benefit of the school system, and ED § 4-115, which requires that surplus school property be transferred to the County government for disposition. In light of those statutes, Board Counsel reasoned, "the legality of the use of Board property for ninety-nine years by a for profit commercial entity is doubtful." Board Counsel further concluded that the 99-year lease would not constitute an alternative financing mechanism authorized by ED § 4-126.
As Board Counsel noted, two 1991 opinions of this Office discuss the authority of a local board to lease school property in light of ED § 4-114. In 76 Opinions of the Attorney General
190 (1991), this Office concluded that a local board could lease school property to a private entity for the purpose of providing special education services to public school students. Because a local board is the The General Assembly subsequently enacted legislation trustee of the property, the opinion relied on factors set forth in Restatement (Second) of Trusts § 189 comment b (1959). The opinion stated, "In general, a trustee may lease trust property if the lease is reasonable, considering, among other factors, `the purposes of the trust' and `the nature of the property and the uses to which it may advantageously be put.'" 76 Opinions of the Attorney General at 192. Moreover, "the assessment of the pertinent factors in this context is for the local board." Id. That opinion concluded that the lease of school property to a private non-public educational institution that provides services to special education students might well be consistent with the local board's trust obligation.
That same year, we also considered whether a school system could permit the construction of a privately owned day care center on school land. 76 Opinions of the Attorney General 147 (1991). That opinion concluded that, despite the recognized need for day care, the general statutory provision in place at that time did not authorize non-school uses of school property. That opinion suggested that the General Assembly consider express authorization for such private use of school property.[1]
We agree with Board Counsel that the proposed transaction does not appear to be consistent with the Board's obligation to hold the property in trust for the benefit of the school system. If the Board believes that it would be advantageous to the school system to swap real estate with a private corporation, it may be able to arrange such a transaction with the cooperation of the State Superintendent and the County government.[2]
 J. Joseph Curran, Jr. Attorney General
 Elliott L. Schoen Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
 BOARD OF EDUCATION OF HARFORD COUNTY 45 East Gordon Street Bel Air, Maryland 21014 OFFICE OF GENERAL COUNSEL Patrick P. Spicer, Esquire General Counsel Ellen M. Petricic Executive Secretary
 November 22, 2005 Ms. Ruth Robin Rich Board of Education of Harford County
 RE: Authority of Local Board of Education to Enter Into Ninety-Nine Year Lease
The Board has requested my opinion regarding the above-referenced issue. Specifically, you have requested that I provide an opinion as to the legal authority of the Board of Education of Harford County ("Board") to enter into a ninety-nine year lease with a Maryland limited liability corporation whereby the Board would lease to the corporation certain real property owned by the Board in consideration of, among other things, the payment to the Board of Five Hundred Thousand Dollars ($500,000.00) and the conveyance to the Board of certain land owned by the corporation, as more fully described herein.
For the reasons set forth herein, it is my opinion that the Board does not have such legal authority but that the state of the law regarding such matter is sufficiently unclear that the prudent course of action would be to request a further opinion regarding this matter from the Maryland Office of the Attorney General.
 I Factual Background
The Facilities Management and Transportation Departments of the Board are located at real property owned by the Board in Hickory, Maryland. This property consists of approximately 6.3 acres overall, plus or minus. Since 2002, the Board has, from time to time, been approached by, first, Fountain Green Venture, Limited ("FGV"), a Maryland limited liability corporation, and SEL Property Management, Inc. ("SEL"), a Maryland corporation, regarding potential acquisition, by way of purchase or lease, of a smaller parcel of the overall Board property, which parcel consists of approximately 1.3 acres, hereinafter referred to as the Subject Parcel. The Subject Parcel is delineated in yellow outline on the attached plat prepared by G. W, Stephens, Inc. and dated April 23, 2002 which is Exhibit A hereto.
Presently, the Subject Parcel is used by the Board for parking of school buses and Board employee vehicles. Since in or about August 2002 to 2005, the Board received unsolicited offers from both FGV and SEL which set forth various proposals regarding potential acquisition by either entity of the Subject Parcel. Interest by FGV and SEL in the Subject Parcel is the result of the Subject Parcel*s location contiguous to real property owned by FGV which is designated as Lot 2 on Exhibit A. Lot 2 is outlined in blue on Exhibit A. It is the Board*s understanding that Lot 2 can be commercially developed. The Subject Parcel, due to its location and size relative to Lot 2 is ostensibly needed by whatever entity develops Lot 2, for the construction of a building of sufficient size to house the commercial operation planned thereat.
After having received unsolicited proposals from both FGV and SEL regarding the Subject Parcel, the Board directed Board staff to consult with the Maryland State Department of Education (MSDE) the Interagency Commission for Public School Construction and Dr. David Lever, the Executive Director of the latter agency regarding how to respond, if at all, to the proposals. A member of the Board, the Superintendent, the Board*s Chief of Administration, the Board*s Assistant Superintendent for Operations and undersigned counsel participated in a telephone conference with Dr. Nancy Grasmick, the State Superintendent of Schools, Valerie Cloutier, Esquire, then Principal Counsel for the State Board of Education/MSDE, and Dr. Lever on April 21, 2005. During this teleconference, the participants discussed the above facts as well as approaches the Board might take in response to the proposals regarding the Subject Parcel.
As a result of the teleconference, the Board received direction from Dr. Lever and Ms. Cloutier to proceed with a request for proposal regarding potential relocation of its existing Facilities Management and Transportation operations. A copy of the public notice seeking such proposals is attached hereto and made a part hereof as Exhibit B. In response to the public notice, the Board received two proposals, one from FGV and one from SEL. Copies of each of said proposals are attached hereto as Exhibits C and D.
After receiving the two proposals, the Board*s Chief of Administration, Assistant Superintendent for Operations and undersigned counsel met with Dr. Lever and Ms. Cloutier at MSDE on June 20, 2005 to review the offers. Subsequently, the Board met and decided to continue exclusive negotiations with FGV based on its proposal. By letter dated September 14, 2005, the Board by undersigned counsel advised FGV that the Board had authorized the Superintendent and her staff to continue exclusive negotiations with FGV regarding the public notice and response thereto.
In response to its letter of September 14, 2005, the Board received a proposed ninety-nine year lease from FGV*s counsel. The Board, having received the proposed lease and having had it reviewed by both undersigned counsel and special real estate counsel, Louis J. Kozlakowski Esquire, determined that before proceeding further, an opinion of the Attorney General should be requested regarding the legal authority of the Board, vel non,
to enter into a ninety-nine year lease with FGV.
The salient provisions of the lease include the following.
 1. The Board would lease the Subject Parcel to FGV for ninety-nine years.
 2. The FGV would pay the Board $500,000.00 for the first year of the lease and, thereafter, one dollar per year.[3]
 3. FGV would convey to the Board with certain improvements real property owned by FGV designated as Lot 2A on Exhibit A consisting of 3.86 acres ±. Lot 2A is outlined in green on Exhibit A.[4]
 4. FGV would, at its own cost and expense, provide certain improvements to the property Lot 2A which would allow the Board to move its parking function currently located at the Subject Parcel as well as other areas of the property currently owned by the Board to Lot 2A.
 5. FGV would ensure access to Lot 2A from the property currently owned by the Board where the Facilities Management and Transportation Departments are located.
 6. The lease will be subject to all required approvals of the State Superintendent.
 II Legal Analysis.
The disposition of real property owned by a local board of education in Maryland is controlled in substantial part by Section 41-14 and 4-115 of the Education Article of the Maryland Annotated Code. The former statute provides that all board property is held by the local board in trust for the benefit of school or school system. The latter statute provides in pertinent part that local boards can dispose of real property owned by them only by declaring such real property surplus and, once having done so, conveying it to the local county government. The issue which is the subject of this opinion is whether the Board has legal authority to lease for ninety-nine years Board owned property under the terms and conditions discussed above.[5]
As Section 4-115 reflects, generally, in the event a local board disposes of real property, it is required to determine that the property in question is no longer needed for school purposes. In the instant matter, the Board is not fully disposing of the real property in question but rather is leasing it for a ninety-nine year period. Currently, the Subject Parcel is being used for school purposes (i.e. for school bus parking and the parking of vehicles used by school employees). Thus, the Board is not disposing of the real property pursuant to Section 4-115(c).
The question thus remains, what legal authority does the Board possess to enter into a ninety-nine year lease of the Subject Parcel to a third party. Two Maryland Attorney General opinions issued on the same day in the same year are informative.
The first opinion (by page sequence) determined that a local school board did not have authority to permit construction of a privately owned daycare center on school land. Specifically, the Baltimore County Board of Education requested the Attorney General*s advice as to whether a private daycare provider could construct a modular building for its own use on a public school site in Baltimore County. The Attorney General opined that a local board of education did not have the authority to permit a private daycare provider or other private corporation to construct a building for its own use on public school property.See 76 Opinion of Maryland Attorney General 147 (1991).
The opinion is silent as to whether a lease of any length; payment of consideration by the daycare provider to the board; or conveyance of new and different land by the daycare provider to the local board were involved in the Baltimore County scenario. Notwithstanding the absence of these latter factors, application of the analysis in the aforementioned Attorney General's opinion would appear to preclude the Board from entering into the ninety-nine year lease proposed.
Examination of the second Attorney General's opinion noted herein appears to give more substance to the notion that the Board may have authority to enter into the proposed lease. In that opinion, found at 76 Opinions of Attorney General 190 (1991), the Attorney General's Office opined that a local board of education may enter into a lease of school property to a private nonprofit educational institution serving disabled students subject to the following conditions. First, the local board must reasonably have determined that the lease would result in direct benefits to the board in the conduct of its educational responsibilities and, secondly, authority for the lease would exist only for that period of time that the private institution's use of the school property was consistent with the local board's obligation as trustee to hold the property for the benefit of the public school system.
Under the terms of the proposed ninety-nine year lease at issue here, the Board would receive, among other things, a 3.86 ± acre site (worth over $1,000,000.00 unimproved in 2002) improved for parking for school buses and other vehicles. Further, the Board would receive the cash amount of $500,000.00 to be dedicated and used for school construction. The receipt of such substantial consideration would be ample basis for the Board to reasonably determine that the lease would result in direct benefits to the Board in the conduct of its educational responsibilities.
It is less clear, however, that FGV*s use of the Board's property would be consistent with the local board's obligation to hold the property in trust for the benefit of the school system. While the Attorney General of Maryland had no difficulty with use of school board property by a private nonprofit educational institution serving disabled students, the legality of the use of Board property for ninety-nine years by a for profit commercial entity is doubtful. In fact, the Attorney General, in the latter opinion, specifically stated that his opinion did not extend to circumstances where a board leased property to a for profit educational institution.
Relevant also is House Bill 1230, codified at Section 4-126 of the Education Article, enacted by the General Assembly in 2004 and effective July 1, 2004. This law was designed to enhance the ability of local boards to finance school construction. See
Advice Letter of Office of the Maryland Attorney General to Mrs. Jacqueline C. Haas, Superintendent of Schools for Harford County dated September 21, 2004, at page 5. The purpose of the ninety-nine year lease is consistent with the general statutory intent of House Bill 1230 (as codified in Section 4-126) that local boards of education have more flexibility with regard to procurement of funds for school construction.[6] However, the lease does not constitute an alternative financing mechanism within the meaning of Section 4-126.
It is my opinion, based on the above analysis, that current law, including the cited Maryland Attorney General's opinions and particularly Section 4-114 of the Education Article, is insufficient to authorize the Board to enter into the ninety-nine year lease. Thus, I recommend that before proceeding further with the 99 year lease proposal, the Board obtain an opinion or advice letter from the Maryland Attorney General*s Office which states that the Board does have such authority.
Sincerely yours,
Patrick P. Spicer
[1] The General Assembly subsequently enacted legislation authorizing the leasing of public school property for day care centers. See ED § 7-109(a)(3). We also note that, since the 1991 opinions were issued, the General Assembly has added subsection (c) to ED § 4-114. Chapters 306, 307, Laws of Maryland 2004. Section 4-114(c)(1) provides that "[a] private entity may hold title to property used for a particular public school orlocal school system if the private entity is contractually obligated to transfer title to the appropriate county board on a specified date." (emphasis added).
This amendment was part of legislation intended to implement the recommendations in the Final Report of the Task Force to Study Public School Facilities (February 2004) ("Task Force Report."). See Fiscal Note for House Bill 1230 (2004) (April 1, 2004). Among other things the Task Force recommended that local boards be permitted to use "alternative financing methods" to finance public school construction. Alternative financing methods authorized by the 2004 legislation include "sale-leaseback arrangements, in which a county board agrees to transfer title to a property, including improvements, to a private entity that simultaneously agrees to lease the property back to the county board and, on a specified date, transfer title back to the county board." ED § 4-126(a)(1). The Task Force Report recommended that the requirement that a local board hold title to property in order to receive State funds should be waived under a sale-leaseback arrangement "if the lease specifies a future date when the title will revert from the private developer to the [local board]." Task Force Report at p. 41. Thus, it appears that ED § 4-114(c)(1) was added to allow for sale-leaseback arrangements for school buildings and similar alternative financing methods.
The present situation does not involve a sale-leaseback of a school or of property to be used for a school system. Rather, it involves a 99-year lease of school property to a private entity for private use. Thus, ED § 4-114(c)(1) does not apply to this transaction and the 2004 amendment of the statute does not affect our analysis.
[2] Under ED § 4-115(c), the Board may, with the approval of the State Superintendent, declare some of its property to be surplus and transfer it to the County for disposition. Thus, assuming that the Superintendent and County government were amenable to the transaction, the Board could essentially trade some of its existing property for other property that it believed more suitable to the school system's needs.
[3] These funds would be placed by the Board in an account for future school construction.
[4] FGV has provided an appraisal of Lot 2A which reflects that Lot 2A's value unimproved was $1,092,000 as of September, 2002.
[5] I have not addressed the secondary issue arising out of the proposal, i.e. that the Board acquire Lot 2A by fee simple conveyance inasmuch as such an acquisition is authorized by Section 4-115(b)(1).
[6] In the teleconference of April 21, 2005, Ms. Cloutier stated informally that the opinion of the Attorney General at 76 Opinion of Maryland Attorney General 190 could be interpreted broadly, in light of the legislative initiative of House Bill 1230, to authorize the Board to enter into the ninety-nine year lease described herein. *Page 36